UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY TITLE INSURANCE COMPANY,** <br><br> Plaintiff, <br><br> v. <br><br> **RICHARD CECERE, ROSEMARIE CECERE, FRANK J. COZZARELLI, WELLS FARGO BANK N.A., and CHAMPION MORTGAGE** <br><br> Defendants <br> v. <br><br> **SECRETARY OF U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, MARGARET HARKNESS,** <br><br> Third Party Defendants | Civ. No. 20-1286 (KM) (JBC) <br><br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

One of the two Third Party Defendants, Secretary of the United States Department of Housing and Urban Development ("HUD"), removed this matter from the Superior Court of New Jersey, Chancery Division – Essex County, to the United States District Court for the District of New Jersey. HUD now seeks to dismiss the Third Party Complaint of *pro se* litigants Richard Cecere and Rosemarie Cecere under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, under Rule 12(b)(6) for failure to state a claim.

For the reasons explained herein, I will grant, without prejudice, HUD's motion to dismiss the Third Party Complaint.

1

**I.      Summary**[1]

This action arose from New Jersey Title Insurance Company's ("NJTIC") action to quiet title ("the NJTIC Complaint") filed on September 20, 2017 in the Superior Court of New Jersey, Chancery Division – Essex County. (NJTIC Compl. at 1) NJTIC alleged that in August 1999, Rosemarie Cecere purchased the property located at 155 Highland Avenue, Montclair, New Jersey ("the Property"). (NJTIC Compl. ¶8; Cecere Am. Answer¶8) In April 2009, Rosemarie Cecere transferred title in the Property to Richard Cecere. (NJTIC Compl. ¶9; Cecere Am. Answer¶9) Then, on April 24, 2009, Wells Fargo Bank, N.A. provided a reverse mortgage loan ("Wells Fargo Mortgage") on the Property to Richard Cecere. (NJTIC Compl. ¶ 11; Cecere Am. Answer¶11)

On May 4, 2009, NJTIC issued title insurance to Wells Fargo in connection with the Wells Fargo Mortgage on the Property. (NJTIC Compl. ¶15; Cecere Am. Answer¶15) On July 7, 2009, Richard Cecere transferred title in the property "to Richard and Rosemarie Cecere, husband and wife." (NJTIC Compl. ¶18; Cecere Am. Answer¶18) NJTIC alleges that the July 2009 transfer did not address the Wells Fargo Mortgage. (NJTIC Compl. ¶22)

Those transfer documents were prepared by Frank Cozzarelli, Esq. (NJTIC Compl. ¶¶10, 19; Cecere Am. Answer¶10, 19) On November 23, 2013, Cozzarelli Law LLP, "a partnership controlled by Frank Cozzarelli, Esq.,"

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case

"NJTIC Compl." = Complaint filed by NJTIC (DE 1-1)

"Ceceres Am. Answer" = Amended Answer filed by Rosemarie and Richard
        Cecere (DE 1-2 at 1-5)

"Cecere Counterclaim" = Counterclaim filed by Rosemarie and Richard Cecere
        (DE 1-2 at 6-9)

"Third Party Compl." = Third Party Complaint filed by Rosemarie and Richard
        Cecere (DE 1-2 at 9-27)

provided a mortgage loan ("Cozzarelli Mortgage") on the Property to Rosemarie Cecere. (NJTIC Compl. ¶23; Cecere Am. Answer¶23)

On July 7, 2016, Wells Fargo filed a Foreclosure Complaint and "named Cozzarelli Law LLP as a defendant, based upon its interests in the Property and its recording of the 2013 Cozzarelli Mortgage." (NJTIC Compl. ¶¶27-28; Cecere Am. Answer¶¶27-28) In his Answer to the Foreclosure Complaint, Cozzarelli acknowledged that his lien was recorded after the Wells Fargo Mortgage lien, but maintained that "because his lien is only against Rosemarie Cecere's interest in the property, and Rosemarie Cecere was not a party to the 2009 Wells Fargo Mortgage, the Cozzarelli lien should have priority over the Wells Fargo lien with respect to Rosemarie Cecere's interest in the Property." (NJTIC Compl. ¶29; Cecere Am. Answer¶29)

In May 2017, Wells Fargo provided a notice of a claim to NJTIC under NJTIC's title policy and "demanded that NJTIC establish title to the Property or pay the claim in full." (NJTIC Compl. ¶¶30-31) Then, in July 2017, Wells Fargo voluntarily dismissed and withdrew the Foreclosure Complaint. (NJTIC Compl. ¶32; Cecere Am. Answer¶32) NJTIC alleges that in September 2017, Wells Fargo transferred service of its mortgage on the Property to Champion Mortgage. (NJTIC Compl. ¶33)

NJTIC then brought its action to quiet the Property's title. NJTIC alleged that the April 2009 and July 2009 transfers of the Property "were fraudulent transfers designed to circumvent Richard's and Rosemarie's obligations to lenders." (NJTIC Compl. ¶35) The complaint alleges that "Cozzarelli was aware that Richard and Rosemarie were husband and wife," "that each had a marital interest in the Property at the time of the closing of the 2009 Wells Fargo Mortgage," and that "Cozzarelli, acting as the closing agent for the 2009 Wells Fargo Mortgage and the issuance of the NJTIC policy, had a duty to encumber the entire fee simple with a first position lien in favor of Wells Fargo." (NJTIC Compl. ¶¶36-37) In sum, NJIT alleged that

> Cozzarelli, Richard Cecere and Rosemarie Cecere acted knowingly, in bad faith and with malice in participating in a scheme designed

3

> to: i) avoid Richard and Rosemarie Cecere's obligations under the 2009 Wells Fargo Mortgage; ii) create an interest in the Property for Frank Cozzarelli; and, as a result therefore, iii) require NJTIC to establish title.

(NJTIC Compl. ¶40)

On April 10, 2018, in addition to filing an Amended Answer, Rosemarie and Richard Cecere filed a Counterclaim (Cecere Counterclaim ¶¶1-11), and a Third Party Complaint naming Wells Fargo, Margaret Harkness, and HUD (Third Party Compl. ¶¶1, 2, 5, 13). In the Third Party Complaint, the Ceceres allege that they were "solicited by Wells Fargo Bank to place a reverse mortgage on their home" and that

> Margaret Harkness, as agent of Wells Fargo Bank, made it crystal clear that Richard Cecere, who [w]as 63 years of age at that time qualified for a Reverse Mortgage. Margaret Harkness also advised Richard Cecere that Rosemarie Cecere who was 55 years of age did not qualify for a reverse mortgage.

(Third Party Compl. ¶¶1-2) They allege that Harkness instructed Rosemarie to convey title solely to Richard in order to qualify for the mortgage. (Third Party Compl. ¶3) The Ceceres further allege that Harkness informed Richard and Cozzarelli that "title could be transferred back to Richard and Rosemarie Cecere as husband and wife" after the mortgage was secured. (Third Party Compl. ¶3) According to the Ceceres, that information was "intended and designed to promote" the Wells Fargo Mortgage "without any consideration of the implications to [the interest] of Rosemarie Cecere," and was "intended and designed to generate fees and income to Wells Fargo Bank when it was not entitled to such compensation." (Third Party Compl. ¶¶8-9) In other words, "Wells Fargo Bank and Margaret Harkness were involved in abusive lending practices." (Third Party Compl. ¶11)

With respect to HUD, the Ceceres allege that the agency "actually fund[ed]" the Wells Fargo Mortgage,[2] was aware of Wells Fargo's "pattern of

---

[2] 12 U.S.C. § 1715z-20 authorizes HUD "to carry out a program of mortgage insurance" that is designed:

4

misconduct," and "had a duty to [the Ceceres] to protect them from abusive and predatory lending practices." (Third Party Compl. ¶¶5, 12, 13) Further, the Third Party Complaint alleges that Wells Fargo was involved in a "conspiracy with Margaret Harkness and HUD to obtain customers from whom they could generate substantial fee income" and that "HUD shares in the fee income generated because of the reverse mortgage signed by third party plaintiff, Richard Cecere." (Third Party Compl. ¶¶21-22)

The Ceceres submit, *inter alia*, that the actions of the Third Party Defendants have deprived Rosemarie of her right to the Property. (Third Party Compl. ¶23) They contend that the Defendants "violated New Jersey common law and federal laws" such as the Real Estate Settlement Procedures Act ("RESPA") and the "truth in lending law," which I interpret to mean the federal Truth in Lending Act ("TILA"). (Third Party Compl. ¶28)

The New Jersey Superior Court entered default, but not default judgment, against HUD. (DE 4-1 at 20; DE 4-5 at 1) On February 6, 2020, the HUD Secretary removed the matter to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1442(a)(1). (DE 1 at 2) The Secretary contended that because the Ceceres "never served the United States Attorney's Office or the Attorney General in the manner set forth in [Federal Rule of Civil Procedure] 4, the HUD Secretary has not been properly served,"

---

(1) to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets; and

(2) to encourage and increase the involvement of mortgagees and participants in the mortgage markets in the making and servicing of home equity conversion mortgages for elderly homeowners.

12 U.S.C. § 1715z-20.

and, therefore, "removal pursuant to 28 U.S.C. § 1442(a)(1) is still timely under 28 U.S.C. § 1446(b)." (DE 1 at 5)

On March 20, 2020, HUD filed its motion (DE 4) to dismiss the Third Party Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. (DE 4 at 1-2)

## II. Discussion

### a. Entry of Default in State Court

At the outset, HUD submits, and the Ceceres concede, that the agency was not properly served with the Third Party Complaint. (DE 4-1 at 21; DE 6 at 1) Federal Rule of Civil Procedure 4 provides, *inter alia*, that "[t]o serve a United States agency . . . , a party must serve the United States." Fed. R. Civ. P. 4(i)(2).

In turn, to serve the United States, a party must:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1). Here, the Ceceres attempted to serve HUD by delivering the summons and Third Party Complaint "to Keith Johnson as Paralegal & Authorized Agent at 451 7th St., SW, Washington, DC 20410." (DE 4-4 at 2, 6) The Ceceres did not attempt to serve the United States Attorney for the District of New Jersey or the Attorney General of the United States. The service therefore did not comply with Rule 4. *See* Fed. R. Civ. P. 4(i)(1).

6

HUD submits that, because service was improper, this Court should "vacate the state court default in all respects" pursuant to Federal Rule of Civil Procedure 55(c). (DE 4-1 at 23)

Prior to removal from state court, "[a]ll injunctions, orders, and other proceedings had in such action . . . shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. However, "once a case has been removed to federal court, "it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 437 (1974); *Taylor v. Gilliam*, No. 13-2947, 2013 WL 6253654, at *3 (D.N.J. Dec. 4, 2013) The Supreme Court has recognized that 28 U.S.C. § 1450 "implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal." *Granny Goose Foods*, 415 U.S. at 437; *First Atl. Leasing Corp. v. Tracey*, 128 F.R.D. 51, 54 (D.N.J. 1989) ("As implied by the statutory language of Section 1450, the District Court has the authority to dissolve or modify injunctions, orders and all other proceedings occurring in state court prior to removal."). In sum, after removal, "interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered." *In re Diet Drugs*, 282 F.3d 220, 232 n.7 (3d Cir. 2002) (internal quotation marks omitted) (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988)); *see also Taylor*, 2013 WL 6253654, at *3 ("Prior to removal the state court judgment was concededly subject to being set aside in the state court. It was subject to the same hazard in the federal court after removal. 28 U.S.C.A., § 1450.") (internal quotation marks omitted) (quoting *Munsey v. Testworth Labs.*, 227 F.2d 902, 903 (6th Cir. 1955)).

Federal Rule of Civil Procedure 55(c) enables a court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In ruling on a motion to set aside a default under Rule 55(c), a district court "must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co. Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); *Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 601 (D.N.J. 2003). Defaults are generally disfavored. *Mettle*, 279 F. Supp. 2d at 206 (citing *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1998)). Thus, "[a]ny doubt should be resolved in favor of the petition to set aside the [default] judgment so that cases may be decided on the merits." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Medunic v. Lederer*, 533 F.2d 891, 894 (3d Cir.1976)).

However, analysis of the *Gold Kist* factors "is not necessary" where "the default judgment was improperly entered." *Gold Kist*, 756 F.2d at 19. A default is improperly entered if the complaint was not properly served. *Id.* (holding "that because the time for filing an answer had not expired, and because there is no evidence that the complaint was properly served, the default and default judgment were improperly entered.") Therefore, the "Third Circuit and multiple district courts within the Circuit have recognized that an entry of default or a default judgment can be set aside if it was not properly entered at the outset, including circumstances where proper service of the complaint is lacking." *Taylor*, 2013 WL 6253654, at *6 (holding that good cause existed to vacate the entry of default because the plaintiff never properly served the United States); *see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 493 (3d Cir. 1993) (holding that because the defendants were not properly served, the district court's entry of default judgment could not stand); *Mettle*, 279 F. Supp. 2d at 603 (holding same).

Here, as explained, the Ceceres admittedly did not properly serve HUD. Therefore, the default was improperly entered against HUD, and must be vacated.

### b. Motions to Dismiss: Legal Standards

#### i. Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). "[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (discussion of facial and factual challenges to jurisdiction); *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of the complaint, the court only considers the allegations of the complaint and documents referred to therein in the light most favorable to the plaintiff. *Lincoln Ben., supra*; *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In essence, a Rule 12(b)(6) standard is applied.

By contrast, where the existence of subject matter jurisdiction is challenged factually, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case. *Id.* Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming

the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008); *see also Lincoln Ben., supra.* [3]

### ii. Rule 12(b)(6)

In considering a motion to dismiss a *pro se* complaint for failure to state a claim, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible

---

[3] The Ceceres failed to specifically oppose HUD's argument that this Court lacks jurisdiction to hear their claims. Thus, the Rule 12(b)(1) motion could be considered unopposed and the Third Party Complaint could be dismissed on that basis. *See Person*, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013). Because they appear *pro se,* I have not taken that course.

on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

### c. Tort claims: Failure to exhaust administrative remedies

It is unclear exactly what claims the Ceceres assert against HUD. In the Third Party Complaint, they assert that HUD had a duty to the Ceceres "to protect them from abusive and predatory lending practices." (Third Party Compl. ¶13) That claim can be construed as sounding in tort. The Ceceres also submit that HUD had an "implied duty" "to act in good faith . . . in the execution of the mortgage contract including services." (Third Party Compl. ¶29) That claim can be construed as sounding in contract. Further, as noted, the Ceceres contend that the Third Party Defendants "violated New Jersey common law and federal laws such as the Real Estate Settlement Procedures Act and the truth in lending law." (Third Party Compl. ¶29)

To the extent that the Third Party Complaint asserts a tort claim against HUD, the agency maintains that such claim is barred under the Federal Tort Claims Act ("FTCA") because the Ceceres failed to exhaust administrative remedies. (DE 4-1 at 25)

The FTCA "is a partial abrogation of sovereign immunity that permits suits for torts against the United States." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). The Act

> permits suits against the United States for torts committed by "an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012) (quoting 28 U.S.C. § 1346(b)(1)). "The only proper defendant in a suit pursuant to the FTCA is the United States." *Priovolos v. F.B.I.*, 632 F. App'x 58, 60 (3d Cir. 2015) (citing *CAN v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008)) (acknowledging that the plaintiff improperly brough an FTCA claim against "only the FBI and its employees" but noting that the "pleading defect can be remedied by the submission of an amended complaint.").

Prior to commencing a civil action under the FTCA, the tort claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Failure to follow that procedure renders the claim "forever barred." *Id.* And,

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim

shall have been finally denied by the agency in writing and sent by certified or registered mail."

28 U.S.C. § 2675(a). Therefore, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that the district court properly dismissed the action for lack of jurisdiction because the plaintiff failed to exhaust administrative remedies prior to initiating a claim under the FTCA); *see also*; *Santos ex rel. Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009) ("To make a claim under the FTCA, a claimant first must file her claim with the administrative agency allegedly responsible for her injuries.").

Here, any tort claims raised by the Ceceres against HUD fails for two reasons. First, the Ceceres did not name the United States as a party. *See Priovolos*, 632 F. App'x at 60. Such defect could be cured by amending the pleadings. *Id.* However, more fundamentally, the Ceceres have not asserted that they brought an administrative claim prior to the initiation of this suit. HUD, too, states that to the best of its knowledge, the Ceceres "have not filed administrative tort claims with HUD regarding matters alleged" in the Third Party Complaint. (DE 4-2 at 1) Therefore, I find this Court lacks jurisdiction over the tort claims asserted in this matter. *See McNeil*, 508 U.S. at 113.[4]

Because administrative remedies were not exhausted, I will dismiss the tort claims asserted in the Third Party Complaint for lack of subject matter jurisdiction.[5]

---

[4] I note also that the Ceceres failed to address HUD's arguments regarding their failure to exhaust administrative remedies. *See Person v. Teamster Local Union 863*, No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). It is unnecessary to rely on a waiver theory.

[5] In the alternative, HUD moves to dismiss for failure to state a claim, because it is now too late for the plaintiffs to file an administrative claim under the relevant statute of limitations. Title 28, U.S. Code, § 2401 provides that a claimant must bring an administrative tort action within two years after the claim's accrual. 28 U.S.C. § 2401(b). "Normally, a tort claim accrues at the time of injury." *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 271 (3d Cir. 2006); *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985). However, an injured party "cannot make a claim until he has or

13

### d. Contract claims: Tucker Act

To the extent that the Third Party Complaint raises contract claims against HUD, the agency submits that the Ceceres failed to establish this Court's jurisdiction to adjudicate those claims under the Tucker Act. (DE 4-1 at 28)

"Jurisdiction over non-tort monetary claims against the United States is exclusively defined by the Tucker Act, as codified at 28 U.S.C. §§ 1346, 1491, because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to non-tort claims seeking monetary relief." *Chabal v. Reagan*, 822 F.2d 349, 353 (3d Cir. 1987); *see also Hahn v. United States*, 757 F.2d 581, 585–86 (3d Cir. 1985) (noting that the Tucker Act "gives the Claims Court jurisdiction over non-tort claims against the United States, and gives the district courts concurrent jurisdiction over such claims not exceeding $10,000."). The Tucker Acts grants to district courts original jurisdiction to hear a civil action against the United States "for recovery of any internal-revenue tax" and

---

should have had notice that he had an action to bring." *Zelenik*, 770 F.2d at 22. Therefore, "an injured party's cause of action does not accrue until he learns of his injury." *Id.* (citing *Urie v. Thompson*, 337 U.S. 163, 69 (1949)). Generally, "when a person learns of his injury, he is on notice that there has been an invasion of his legal rights, and that he should determine whether another may be liable to him." *Id.* In certain circumstances, a person may be unaware of the cause of his injury; thus, "when the fact of injury alone is insufficient to put an injured party on notice of its cause, the Supreme Court has indicated that the accrual of the claim would be delayed until the injured party learns of both the fact of his injury and its cause." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

Here, at the latest, the Ceceres became aware of the alleged injury and HUD's alleged involvement on September 19, 2017, when NJTIC filed its action to quiet the Property's title. Thus, the Ceceres had two years from that date to file an administrative action with HUD. *See* 28 U.S.C. § 2401(b). Because the time has elapsed from when the Ceceres could properly bring an administrative action for their tort claim – a prerequisite to having that claim adjudicated by this Court – their tort claims would be dismissed on these alternative grounds.

While courts have considered equitable tolling of the statute of limitations, that doctrine is an "extraordinary" one requiring compelling circumstances. *See D.J.S.-W. By Stewart v. United States*, 962 F.3d 745, 749 (3d Cir. 2020).

> [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1346(a). Thus, "[u]nder the Tucker Act, the United States Claims Court and district courts share original jurisdiction over non-tort monetary claims against the United States not exceeding $10,000." *Chabal*, 822 F.2d at 353 (the so-called "Little Tucker Act"). The United States Claims Court retains "[o]riginal jurisdiction over such claims seeking more than $10,000." *Id.* (the so-called "Big Tucker Act")

The Tucker Act is "only a jurisdictional statute." *Testan*, 424 U.S. at 398. Therefore, "it does not create any substantive right enforceable against the United States for money damages." *Id.* The substantive right must arise from either the Constitution, another act of Congress, a federal regulation, liquidated damages, "or upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(1).

The Third Party Complaint alleges that HUD "had an implied duty to act in good faith and in the execution of the mortgage contract including servicing." (Third Party Compl. ¶29) In their opposition letter, the Ceceres explain that the Wells Fargo Mortgage constitutes a contractual agreement between HUD and the Ceceres. (DE 6 at 1) The Ceceres further explain that they are "seeking damages in the full amount due under the mortgage against HUD for failing to supervise the conduct of Wells Fargo." (DE 6 at 6). They submit that HUD's alleged "failure to supervise its agent has caused [the Ceceres] significant monetary damage and the potential loss of [their] property." (DE 6 at 1)

HUD submits that the Ceceres cannot establish jurisdiction for their purported contract claim because they have not pleaded a dollar amount for any damages HUD allegedly inflicted.[6] (DE 4-1 at 28) What they mean is that

---

[6] Because the matter was removed from state court, the failure to specify a dollar amount of damages is not surprising. That would be in accord with New Jersey

15

the damages are not explicitly pled to exceed $10,000. *See Anderson v. Gates*, 20 F. Supp. 3d 114, 127 (D.D.C. 2013) ("[F]or a plaintiff to satisfy his burden of establishing a district court's subject-matter jurisdiction under the Little Tucker Act, he must plead a dollar amount in damages, and that amount must not exceed $10,000.") I agree, but the matter appears to be one that could easily be remedied by amendment. I will therefore dismiss without prejudice their contract claims for lack of subject matter jurisdiction. *See Flammia v. Nat'l Flood Ins. Program*, No. 18-13474, 2020 WL 5560481, at *3 (D.N.J. Sept. 16, 2020) (dismissing the plaintiffs' claims against the Federal Emergency Management Agency, a federal agency, because the plaintiffs asserted claims that exceeded $10,000 and, as such, failed to establish the district court's jurisdiction under the Tucker Act).

In the event of amendment, however, I note that HUD also argues persuasively that the complaint fails to plead "facts establishing the existence of a contract with HUD, any contractual terms, or any conduct by HUD constituting a breach." Any amended pleading against HUD would have to address these non-jurisdictional defects as well.[7]

---

pleading practice. *See* N.J. Ct. R. 4:5-2 (except in Special Civil Part, "the pleading shall demand damages generally without specifying the amount").

[7] To sustain a breach of contract claim under New Jersey law, "a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985))

As a threshold matter, the Third Party Complaint does not allege that a contract existed between the Ceceres and HUD. In their opposition letter, the Ceceres clarify that the Wells Fargo Mortgage "is the contractual agreement" on which they intend to base their claim. (DE 6 at 1) [I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 383 (3d Cir. 2016). Thus, the Court cannot properly consider the allegations belatedly raised in the opposition papers. To guide these *pro se* litigants in the event they seek to file an amended pleading, I will point out that the allegations are additionally defective in that they do not state HUD's

### e. RESPA

The Third Party Complaint asserts that defendants' conduct violated RESPA. (Third Party Compl. ¶28) The Ceceres do not specify the portion of that statute that they invoke. However, they do allege that (1) Wells Fargo, Harkness, and HUD were engaged in a conspiracy "to obtain customers from who they could generate substantial fee income" and (2) HUD shares in the fee income generated. (Third Party Compl. ¶¶21-22) A liberal reading of those allegations indicates that the Ceceres may be asserting a claim under 12 U.S.C. § 2607, which prohibits kickbacks and unearned fees:

> No *person* shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S C. § 2607(a) (emphasis added). The Act also prohibits splitting of charges: "No *person* shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b) (emphasis added).

"Person" is defined under the Act: "the term 'person' includes individuals, corporations, associations, partnerships, and trusts." 12 U.S.C. § 2602(5). However, under RESPA, "person" does not include the United States or a federal agency. *See id.*; *Rodriguez v. Bank of Am., N.A*, No. 16-8197, 2017 WL 3086369, at *5 (D.N.J. July 20, 2017) (dismissing the plaintiff's RESPA claims against HUD for lack of subject matter jurisdiction because "the definition of 'person' 'implicitly exclud[es] government entities.'") (alteration in original); *United States v. Davis*, No. 17-4136, 2018 WL 6694826, at *4 (C.D. Ill. Nov. 15,

---

obligations under the alleged contract or identify the conduct that constituted a breach of those obligations. *See Sheet Metal Workers*, 737 F.3d at 900. Any amended pleading must also adequately allege causation, *i.e.,* a link between the alleged breach and the injury they suffered. *See id.*

2018) ("RESPA does not waive the federal government's sovereign immunity, so either the Court does not have subject matter jurisdiction over counts two and three of Nelson's Countercomplaint or she fails to state a claim for relief.")

Whether viewed as a jurisdictional matter or as a failure to state a claim (I view it as the former), HUD is not included as a "person" under RESPA. The Ceceres' RESPA claims against HUD are dismissed.

### f. TILA

The Third Party Complaint also alleges a violation of TILA. (Third Party Compl. ¶28) "The Truth in Lending Act regulates the relationship between lenders and consumers, including mortgagees and mortgagors, by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). *See* 15 U.S.C. § 1601 ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.").

However, the Act prohibits the imposition of civil or criminal penalties upon the United States, or any federal agency, for any violation: "No civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof, or upon any State or political subdivision thereof, or any agency of any State or political subdivision." 15 U.S.C. § 1612(b). Here, the Ceceres seek money damages, which, under TILA, cannot be imposed on a federal agency such as HUD. *See id.*; *United States v. Hemmons*, 774 F. Supp. 346, 348 (E.D. Pa. 1991) (dismissing the defendant's TILA claim as legally insufficient because "[e]ven if the defendants' allegations were true, and the TILA had been violated, the defendants would not be entitled to recover monetary damages from HUD to compensate for the violation.") Therefore, the Ceceres' TILA claims must be dismissed as well.

18

Because TILA does not authorize such a claim against the United States at all, and in the absence of such authorization sovereign immunity bars a claim, this dismissal may be regarded as a jurisdictional one under Rule 12(b)(1). But even if treated as failure to state a claim under Rule 12(b)(6), the grounds are the same.

### Conclusion

For the reasons set forth above, I will grant HUD's motion (DE 4) to dismiss the Third Party Complaint for lack of subject matter jurisdiction, and in the alternative for failure to state a claim upon which relief can be granted.

An appropriate order follows.

Dated: December 7, 2020

/s/ Kevin McNulty
_____
**Kevin McNulty
United States District Judge**